The charter of the college (act of 1838) enacts among other things: sec. 1, "The trustees of Davidson College shall be able and capable to purchase, have, receive, take, hold, and enjoy in fee simple or lesser estates, any land, c., by gift, grant, devise, c.; and shall be able and capable, in law, to take, receive, and possess all moneys, goods and chattels, that have been, or shall hereafter be given, sold or bequeathed, for the use of said college, c." Sec. 10. "Be it further enacted, that the whole amountof real and personal estate belonging to said college, shall not any at onetime exceed in value, the sum of two hundred thousand dollars."
These words express, very clearly, the intention of the Legislature, that this college shall not own, at any one time, more than two hundred thousand dollars' worth of property. The motives for making this restriction, and the policy upon which it is based, are not open to enquiry by us. The restriction is made by the act which creates the corporation, and our consideration is confined to its legal effect.
The testator, besides a devise of a large amount of real estate, bequeaths, for the use of the college, a fund of personalty, which, when added to the property owned by the college at the time of his death, will greatly exceed $200,000. We have this question: Is there any principle upon which this Court can declare, that the college is entitled to the excess of the fund, after the $200,000 is fully made up, and decree *Page 257 
that the executors shall pay over such excess for the use of the college? or are the next of kin of the testator entitled to the excess, on the ground, that it is not effectually disposed of by the will?
The general rule is well settled: When a legacy, from any cause, fails to take effect, the subject devolves upon the next of kin of the testator, as property undisposed of; for an ineffectual disposition, is no disposition at all. For instance, if a legacy fails by "lapse," i. e., the death of the legatee in the life-time of the testator; or by reason of its vagueness, as when the object of the bounty is not sufficiently described to enable the Court to say who is to take beneficially; Bridges v.Pleasants, 4 Ire. Eq. 26, where the object was "the poor saints;" or because the purpose of the testator is against the policy of the law, i. e., to establish an order of privileged slaves; Lea v. Brown, ante, 142; or, where those for whose benefit the bounty was intended, refuse to accept it; McAuley v. Wilson, 1 Dev. Eq. 276; or, where those for whose benefit the bounty is intended are positively forbidden by law from owning it, which is our case — made stronger, if possible, by the fact, that the prohibition is expressed in the very act by which the corporation is created.
The mere statement of the proposition seems sufficient for its solution; but as the amount involved is large, and the question a new one, we desired to hear all that could be said upon it, and to have the authorities examined; for that purpose, as there was not a full argument at the first term, we directed the next of kin and others to be made parties, and requested a second argument, suggesting in general terms, that there might be a distinction between conveyances executed inter vivos, and, possibly, devises; to which class of cases we had been referred, as establishing the distinction between a capacity "to take" and "to hold" real estate, and the devolution of property by act of law, and wills of personalty.
We are satisfied, after hearing a full argument in behalf of the college, that there is no principle upon which a decree can be made in its favor, in respect to the excess of the fund. *Page 258 
In England, under the doctrine of cy pres, the Chancellor would direct the excess to be applied to some other charity, as near as might be, like that indicated by the testator, and if no other male Presbyterian college existed, it would be applied to a female college of that denomination.Attorney General v. Tonna, 2 Ves. Jun. 1; 4 Bro. C. C. 103; but our Court has never acted upon that refinement. McAuley v. Wilson, sup.
The cases of purchases of land by aliens and corporations, under the statutes of mortmain, are not in point. It is settled, that an alien or a corporation may, by purchase, take land, but cannot hold; and the doctrine is put on the ground, that if one by an executed conveyance, which is hisown act, passes land to an alien, or corporation, he shall not have it back; but it shall belong to the sovereign, upon office found. It is otherwise in regard to the act of law. If the heir, of one dying seized of land, be an alien, the law will not cast the descent on him, because he cannot hold beneficially, and the law will not give with one hand and take away with the other, but will cast the descent upon the next relation who is capable of holding. For the same reason, an alien husband does not take as tenant by the curtesy, nor an alien wife take dower.
In the case of a will of personalty, the property does not pass directly to the legatee; and the law will not require, or permit, the executor to assent to the legacy, unless it can take effect beneficially, according to the intention of the testator; but it devolves upon the next of kin, by the general rule, stated and illustrated above.
It was said, in the argument, that as the testator's object was a good one — the encouragement of learning, and his intention to give this fund to the college was clear, the Court should so decree, without looking at the consequences, and leave the question, as to whether the college violated its charter by taking it, to be settled upon proceedings instituted for that purpose, if the sovereign should see proper to do so. The reply to the first proposition is: The encouragement of learning is, in general, a good object, but it ceases to be so, when it *Page 259 
becomes necessary to violate a positive law. To the second: This Court is a co-ordinate branch of the government; it may be, that had this property been vested in the college by a direct gift inter vivos, the power of the Court could not have been called into action, except upon proceedings instituted by another branch of the government; but as a case is now instituted, it must exercise its power, and there is a solemn obligation resting upon it, not to aid, or sanction, a violation of the law, upon the suggestion that another department of the government can more properly see to its redress.
But it is asked: Are the plaintiffs in a worse condition, because the executors declined to pay over the fund without being protected by the sanction of this Court, than if they had been willing to take the responsibility of paying it over without suit? Certainly not. Upon the death of the testator, without having effectually disposed of this fund, the rights of the next of kin "were vested." They could have filed a bill to prevent the executor from paying it over, or to follow the fund in the hands of the plaintiffs. This is also a full answer to the position, that the act of the Legislature, at its last session, by which the college is allowed to own property to the value of $500,000, and all right to the fund on the part of the State or of the University is relinquished, removes the objection to the plaintiffs' recovery. The rights of the next of kin being vested, the act of the Legislature does not in anywise affect them; so, the only effect of the act, besides enlarging the amount which the college is now capable of owning, is to waive any right of the State; but as we have seen, the State had none.
This being a bill against the executors only, the personalty was directly involved; but upon a suggestion, that the heirs-at-law might have an interest in the question, whether the full amount of the $200,000 should be made up out of the personalty alone, or out of the personalty and realty devised, by rateable contribution, it was directed that they should be made parties. We are satisfied that the personalty is the primary fund, and the requisite amount must be made up *Page 260 
out of that exclusively; for which the necessary enquiry will be directed. The bill will be dismissed as to the heirs, without costs, as they claim the legal title to the land. The question between them and the college may be presented in an action of ejectment, if the parties are so advised.